N.Y.S.D. Case #
15-cv-3440(KPF)

16-748
Christiansen v. Omnicom Group, Inc.

## UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

––––––––––––––

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** March 27, 2017

August Term, 2016

(Argued: January 20, 2017     Decided: March 27, 2017)

Docket No. 16-748

––––––––––––––

ANONYMOUS,

*Plaintiff,*

MATTHEW CHRISTIANSEN,

*Plaintiff-Appellant,*

– v. –

OMNICOM GROUP, INCORPORATED, DDB WORLDWIDE COMMUNICATIONS GROUP
INCORPORATED, JOE CIANCIOTTO, PETER HEMPEL, AND CHRIS BROWN,

*Defendants-Appellees.*

––––––––––––––

B e f o r e :

ROBERT A. KATZMANN, *Chief Judge*, DEBRA ANN LIVINGSTON, *Circuit Judge, and*
MARGO K. BRODIE, *District Judge.*[*]

––––––––––––––

[*] Judge Margo K. Brodie, of the United States District Court for the Eastern District of
New York, sitting by designation.

CERTIFIED COPY ISSUED ON 03/27/2017

———————

Plaintiff-appellant Matthew Christiansen brought this action against his employer under, *inter alia*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, alleging that he was subjected to various forms of workplace discrimination due to his failure to conform to gender stereotypes. The United States District Court for the Southern District of New York (Failla, *J.*) construed Christiansen's Title VII claim as an impermissible sexual orientation discrimination claim and dismissed it pursuant to *Simonton v. Runyon*, 232 F.3d 33 (2d Cir. 2000). On appeal, Christiansen argues that we should reconsider our decision in *Simonton* and hold that Title VII prohibits discrimination on the basis of sexual orientation. This panel lacks the authority to reconsider *Simonton*, which is binding precedent. However, we hold that Christiansen's complaint plausibly alleges a gender stereotyping claim cognizable under the Supreme Court's decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). Therefore, we **REVERSE** the district court's dismissal of Christiansen's Title VII claim and **REMAND** for further proceedings consistent with this opinion. We **AFFIRM** the judgment of the district court in all other respects.

KATZMANN, *Chief Judge*, and BRODIE, *District Judge*, concur in a separate opinion.

———————

SUSAN CHANA LASK, Law Offices of Susan Chana Lask, New York, NY, *for Plaintiff-Appellant* Matthew Christiansen.

HOWARD J. RUBIN (Shira Franco and Judith Kong, *on the brief*), Davis & Gilbert LLP, New York, NY, *for Defendants-Appellees* Omnicom Group Incorporated, DDB Worldwide Communications Group Incorporated, Peter Hempel, and Chris Brown.

RICK OSTROVE, Leeds Brown Law, P.C., Carle Place, NY, *for Defendant-Appellee* Joe Cianciotto.

BARBARA L. SLOAN, Attorney, Equal Employment Opportunity
Commission, Office of General Counsel, Washington, D.C. (P.
David Lopez, General Counsel; Jennifer S. Goldstein,
Associate General Counsel; and Margo Pave, Assistant
General Counsel, Equal Employment Opportunity
Commission, Office of General Counsel, Washington, D.C., *on
the brief*), *for Amicus Curiae* Equal Employment Opportunity
Commission, *in support of Plaintiff-Appellant*.

Lenora M. Lapidus, Gillian L. Thomas, Ria Tabacco Mar, and Leslie
Cooper, American Civil Liberties Union Foundation, New
York, NY; Erin Beth Harrist, Robert Hodgson and Christopher
Dunn, New York Civil Liberties Union Foundation, New
York, NY, *for Amici Curiae* American Civil Liberties Union;
New York Civil Liberties Union; 9to5, National Association of
Working Women; A Better Balance; American Association of
University Women; California Women's Law Center;
Coalition of Labor Union Women; Equal Rights Advocates;
Gender Justice; Legal Momentum; Legal Voice; National
Association of Women Lawyers; National Partnership for
Women and Families; National Women's Law Center;
Southwest Women's Law Center; Women Employed;
Women's Law Center of Maryland; Women's Law Project, *in
support of Plaintiff-Appellant*.

Peter T. Barbur, Cravath, Swaine & Moore LLP, New York, NY, *for
Amici Curiae* 128 Members of Congress, *in support of Plaintiff-
Appellant*.

Shannon P. Minter and Christopher F. Stoll, National Center for
Lesbian Rights, San Francisco, CA, *for Amicus Curiae* National
Center for Lesbian Rights, *in support of Plaintiff-Appellant*.

Michael D.B. Kavey, Brooklyn, NY; Omar Gonzalez-Pagan, Lambda
Legal Defense and Education Fund, Inc., New York, NY;
Gregory R. Nevins, Lambda Legal Defense and Education
Fund, Inc., Atlanta, GA, *for Amicus Curiae* Lambda Legal

Defense and Education Fund, Inc., *in support of Plaintiff-Appellant.*

_____

PER CURIAM:

Plaintiff-appellant Matthew Christiansen sued his employer, supervisor, and others affiliated with his company (collectively, "defendants") under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and state and local law alleging that he was discriminated against at his workplace due to, *inter alia*, his HIV-positive status and his failure to conform to gender stereotypes. The United States District Court for the Southern District of New York (Failla, *J.*) dismissed Christiansen's federal claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and declined to exercise supplemental jurisdiction over his state and local claims. *See Christiansen v. Omnicom Grp., Inc.*, 167 F. Supp. 3d 598, 612, 616–18, 622 (S.D.N.Y. 2016). In its decision, the district court concluded that *Simonton v. Runyon*, 232 F.3d 33 (2d Cir. 2000), and *Dawson v. Bumble & Bumble*, 398 F.3d 211 (2d Cir. 2005), holding that Title VII does not prohibit discrimination on the basis of sexual orientation, precluded Christiansen's Title VII claim. *Christiansen*, 167 F. Supp. 3d at 618, 622.

4

Christiansen primarily appeals this aspect of the district court's decision.[1]

## I. BACKGROUND

Christiansen, an openly gay man who is HIV-positive, worked as an associate creative director and later creative director at DDB Worldwide Communications Group, Inc., an international advertising agency and subsidiary of Omnicom Group, Inc. Christiansen's complaint alleged that his direct supervisor engaged in a pattern of humiliating harassment targeting his effeminacy and sexual orientation. According to Christiansen, in the spring and summer of 2011, his supervisor drew multiple sexually suggestive and explicit drawings of Christiansen on an office whiteboard. The most graphic of the images depicted a naked, muscular Christiansen with an erect penis, holding a manual air pump and accompanied by a text bubble reading, "I'm so pumped for marriage equality." J.A. at 16 ¶ 34.C; J.A. at 42. Another depicted Christiansen in tights and a low-cut shirt "prancing around." J.A. at 16 ¶ 34.A; J.A. at 40. A

---

[1] Christiansen also purports to challenge the district court's dismissal of his ADA claim for failure to comply with the statute of limitations. The district court, however, did not dismiss the ADA claim on this basis and instead concluded that Christiansen did not allege facts constituting discrimination under the ADA. *Christiansen*, 167 F. Supp. 3d at 613–17. We thus need not consider Christiansen's statute of limitations argument, and we affirm the district court's dismissal of Christiansen's ADA claim.

third depicted Christiansen's torso on the body of "a four legged animal with a tail and penis, urinating and defecating." J.A. at 16 ¶ 34.B; J.A. at 41. Later in 2011, Christiansen's supervisor circulated at work and posted to Facebook a "Muscle Beach Party" poster that depicted various employees' heads on the bodies of people in beach attire. J.A. at 13 ¶ 30. Christiansen's head was attached to a female body clad in a bikini, lying on the ground with her legs upright in the air in a manner that one coworker thought depicted Christiansen as "a submissive sissy." J.A. at 13 ¶ 30; J.A. at 43.

Christiansen's supervisor also made remarks about the connection between effeminacy, sexual orientation, and HIV status. The supervisor allegedly told other employees that Christiansen "was effeminate and gay so he must have AID[S]." J.A. at 15 ¶ 30. Additionally, in May 2013, in a meeting of about 20 people, the supervisor allegedly told everyone in the room that he felt sick and then said to Christiansen, "It feels like I have AIDS. Sorry, you know what that's like." J.A. at 17 ¶ 38. At that time, Christiansen kept private the fact that he was HIV-positive.

On October 19, 2014, Christiansen submitted a complaint to the Equal Employment Opportunity Commission ("EEOC") detailing the harassment

6

described above. After receiving a "Notice of Right to Sue" from the EEOC, Christiansen filed this lawsuit in the United States District Court for the Southern District of New York on May 4, 2015. Shortly thereafter, defendants moved to dismiss the complaint. In their motion to dismiss, defendants argued, *inter alia*, that Christiansen's claim under Title VII was a sexual orientation discrimination claim rather than a gender stereotyping claim and was thus not cognizable under *Simonton v. Runyon*, 232 F.3d 33 (2d Cir. 2000), and *Dawson v. Bumble & Bumble*, 398 F.3d 211 (2d Cir. 2005).

The district court agreed. In its decision, the district court described at length difficulties in distinguishing sexual orientation discrimination claims from gender stereotyping claims, specifically noting that negative views people hold of those with certain sexual orientations may be based on stereotypes about appropriate romantic associations between men and women. *See Christiansen*, 167 F. Supp. 3d at 619–20. Having reviewed the decisions of other district courts addressing this issue in the wake of *Simonton* and *Dawson*, the district court concluded that "no coherent line can be drawn between these two sorts of claims." *Id.* at 620. Nevertheless, the district court recognized that "the prevailing law in this Circuit—and, indeed, every Circuit to consider the question—is that

such a line must be drawn." *Id*. Although the district court considered several

references to effeminacy in the complaint, it concluded that, as a whole,

Christiansen's complaint did not allege that he was discriminated against

because he did not conform to gender stereotypes, but because he was gay. *Id*. at

620–22. As a result, the district court held that Christiansen's claim was a sexual

orientation discrimination claim that was not cognizable under Title VII

pursuant to *Simonton* and *Dawson* and dismissed the claim under Rule 12(b)(6).

*Id.* at 622.

## II.  DISCUSSION

"We review a District Court's grant of a motion to dismiss under Rule

12(b)(6) for failure to state a claim *de novo,* accepting the complaint's factual

allegations as true and drawing all reasonable inferences in the plaintiff's favor."

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir.

2014) (internal quotation marks omitted). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this

standard, a plaintiff must "plead[] factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."
*Id.*

Title VII makes it "an unlawful employment practice for an employer . . .
to fail or refuse to hire or to discharge . . . or otherwise to discriminate against
any individual with respect to his [or her] compensation, terms, conditions, or
privileges of employment, because of such individual's . . . sex." 42 U.S.C.
§ 2000e-2(a)(1). On appeal, Christiansen argues, supported by various *amici*, that
we should reconsider our decisions in *Simonton* and *Dawson* in light of a changed
legal landscape and hold that Title VII's prohibition of discrimination "because
of . . . sex" encompasses discrimination on the basis of sexual orientation.
Because we are "bound by the decisions of prior panels until such time as they
are overruled either by an en banc panel of our Court or by the Supreme Court,"
*United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004), "it [is] ordinarily . . .
neither appropriate nor possible for [a panel] to reverse an existing Circuit
precedent," *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67
(2d Cir. 2009). We thus lack the power to reconsider *Simonton* and *Dawson*.

However, we disagree with the district court's conclusion that
Christiansen failed to plausibly allege a Title VII claim based on the gender

9

stereotyping theory of sex discrimination articulated in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), which is also binding on this panel. In *Price Waterhouse*, the female plaintiff, a senior manager at an accounting firm, was described as "macho" and "masculine" and informed that "to improve her chances for partnership, . . . [she] should walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." 490 U.S. at 231–32, 235 (internal quotation marks omitted). After her office declined to nominate her for partnership, she sued under Title VII alleging sex discrimination. *Id*. at 231–33. Six members of the Supreme Court held that adverse employment action rooted in "sex stereotyping" or "gender stereotyping" was actionable sex discrimination. *Id*. at 250–52 (plurality); *see also id*. at 258 (White, J., concurring); *id*. at 272–73 (O'Connor, J., concurring).

Here, as noted above, Christiansen's complaint identifies multiple instances of gender stereotyping discrimination. His complaint alleges that his supervisor described him as "effeminate" to others in the office, J.A. at 15 ¶ 30, and depicted him in tights and a low-cut shirt "prancing around," J.A. at 16 ¶ 34.A; J.A. at 40. The complaint further alleges that the "Muscle Beach Party" party poster, depicting Christiansen's head attached to a bikini-clad female body

10

lying on the ground with her legs in the air, was seen by at least one coworker as portraying Christiansen "as a submissive sissy." J.A. 13 ¶ 30. The district court acknowledged these facts but concluded that because Christiansen's complaint contained fewer allegations about his effeminacy than about his sexual orientation, the allegations about his effeminacy did not "transform a claim for discrimination that Plaintiff plainly interpreted—and the facts support—as stemming from sexual orientation animus into one for sexual stereotyping." *Christiansen*, 167 F. Supp. 3d at 621. The district court also opined that permitting Christiansen's Title VII claim to proceed "would obliterate the line the Second Circuit has drawn, rightly or wrongly, between sexual orientation and sex-based claims." *Id.* at 622.

The district court's decision draws attention to some confusion in our Circuit about the relationship between gender stereotyping and sexual orientation discrimination claims. Some district courts in this Circuit have viewed *Simonton* and *Dawson* as making it "especially difficult for gay plaintiffs to bring" gender stereotyping claims. *Maroney v. Waterbury Hosp.*, No. 3:10-CV-1415 (JCH), 2011 WL 1085633, at *2 n.2 (D. Conn. Mar. 18, 2011); *see also Estate of D.B. v. Thousand Islands Cent. Sch. Dist.*, 169 F. Supp. 3d 320, 332–33 (N.D.N.Y.

11

2016) ("The critical fact under the circumstances is the actual sexual orientation of the harassed person."). Such cases misapprehend the nature of our rulings in *Simonton* and *Dawson*. While *Simonton* observed that the gender stereotyping theory articulated in *Price Waterhouse* "would not bootstrap protection for sexual orientation into Title VII because not all homosexual men are stereotypically feminine," 232 F.3d at 38, it acknowledged that, at a minimum, "stereotypically feminine" gay men *could* pursue a gender stereotyping claim under Title VII (and the same principle would apply to "stereotypically masculine" lesbian women). *Simonton* and *Dawson* do not suggest that a "masculine" woman like the plaintiff in *Price Waterhouse*, 490 U.S. at 235, has an actionable Title VII claim unless she is a lesbian; to the contrary, the sexual orientation of the plaintiff in *Price Waterhouse* was of no consequence. In sum, gay, lesbian, and bisexual individuals do not have *less* protection under *Price Waterhouse* against traditional gender stereotype discrimination than do heterosexual individuals. *Simonton* and *Dawson* merely hold that being gay, lesbian, or bisexual, standing alone, does not constitute nonconformity with a gender stereotype that can give rise to a cognizable gender stereotyping claim.

12

The gender stereotyping allegations in Christiansen's complaint are cognizable under *Price Waterhouse* and our precedents. Christiansen alleges that he was perceived by his supervisor as effeminate and submissive and that he was harassed for these reasons. Furthermore, the harassment to which he was subjected, particularly the "Muscle Beach Party" poster, is alleged to have specifically invoked these "stereotypically feminine" traits. *Simonton*, 232 F.3d at 38. The district court commented that much more of the complaint was devoted to sexual orientation discrimination allegations than gender stereotyping discrimination allegations[2] and that it thus might be difficult for Christiansen to withstand summary judgment or prove at trial that he was harassed because of his perceived effeminacy and flouting of gender stereotypes rather than because of his sexual orientation. Even if that were Christiansen's burden at summary judgment or at trial—and we do not hold here that it is—it is not our task at the

---

[2] This highlights an issue that may arise when a plaintiff alleges discrimination under Title VII as well as under state and local laws that *do* prohibit sexual orientation discrimination. *See, e.g.,* N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a). In such a case, one would expect a plaintiff to detail alleged instances of sexual orientation discrimination in violation of state and local law alongside alleged instances of gender stereotyping discrimination in violation of federal law. When evaluating such a complaint, courts should not rely on the mere fact that a complaint alleges sexual orientation discrimination to find that a plaintiff fails to state a separate claim for gender stereotyping discrimination, but should instead independently evaluate the allegations of gender stereotyping.

motion to dismiss stage to weigh the evidence and evaluate the likelihood that

Christiansen would prevail on his Title VII gender stereotyping claim. Instead,

we assess whether he has "state[d] a claim to relief that is plausible on its face."

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). We hold that he has.[3]

### III.   CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's dismissal of

Christiansen's Title VII claim and **REMAND** for further proceedings consistent

with this opinion. We **AFFIRM** the judgment of the district court in all other

respects.

---

[3] Defendants argue on appeal that Christiansen's Title VII claim is time-barred.
Christiansen responds that the continuing violation doctrine and equitable estoppel
apply to his claims. Because the district court did not reach the time-bar issue below, we
will not decide it here in the first instance. Instead, we leave it to the district court to
determine, on remand, whether Christiansen's claims are time-barred.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

14

KATZMANN, *Chief Judge*, and BRODIE, *District Judge*, concurring:

To ascertain whether Title VII of the Civil Rights Act of 1964 prohibits sexual orientation discrimination, we begin with the text:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . .

42 U.S.C. § 2000e-2(a)(1). Christiansen and *amici* advance three arguments, none previously addressed by this Court, that sexual orientation discrimination is, almost by definition, discrimination "because of . . . sex." They argue first that sexual orientation discrimination is discrimination "because of . . . sex" because gay, lesbian, and bisexual individuals are treated in a way that would be different "but for" their sex. Second, they argue that sexual orientation discrimination is discrimination "because of . . . sex" because gay, lesbian, and bisexual individuals are treated less favorably based on the sex of their associates. Finally, they argue that sexual orientation discrimination is discrimination "because of . . . sex" because gay, lesbian, and bisexual individuals are treated less favorably because they do not conform to gender stereotypes, particularly stereotypes about the proper roles of men and women

in romantic relationships. I find persuasive these arguments, which reflect the evolving legal landscape since our Court's decisions in *Simonton v. Runyon*, 232 F.3d 33 (2d Cir. 2000), and *Dawson v. Bumble & Bumble*, 398 F.3d 211 (2d Cir. 2005), holding that sexual orientation discrimination claims are not cognizable under Title VII. Concluding that it was constrained by the law as it then was, the *Simonton* Court expressly decried the "appalling persecution," 232 F.3d at 35, that Simonton endured because of his sexual orientation, stating that such persecution was "morally reprehensible whenever and in whatever context it occurs." *Id*. For the reasons that follow, I write separately to express my view that when the appropriate occasion presents itself, it would make sense for the Court to revisit the central legal issue confronted in *Simonton a*nd *Dawson*, especially in light of the changing legal landscape that has taken shape in the nearly two decades since *Simonton* issued.

## I.  Sexual Orientation Discrimination As Traditional Sex Discrimination

First, sexual orientation discrimination is sex discrimination for the simple reason that such discrimination treats otherwise similarly-situated people differently solely because of their sex. A person is discriminated against "because of . . . sex" if that person is "exposed to disadvantageous terms or conditions of

employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)). As the Supreme Court has alternatively explained, an action constitutes sex discrimination under Title VII if "the evidence shows treatment of a person in a manner which *but for that person's sex* would be different." *City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711 (1978) (emphasis added) (internal quotation marks omitted). "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] . . . because of . . . sex,'" *Oncale*, 523 U.S. at 81 (emphasis omitted), and Title VII's prohibition "must extend to [discrimination] *of any kind* that meets the statutory requirements," *id.* at 80 (emphasis added).

Sexual orientation discrimination meets this test. As the Equal Employment Opportunity Commission ("EEOC") has observed, sexual orientation "cannot be defined or understood without reference to sex," *Baldwin v. Foxx*, E.E.O.C. Decision No. 0120133080, 2015 WL 4397641, at *5 (July 16, 2015), because sexual orientation is defined by whether a person is attracted to people

3

of the same sex or opposite sex (or both, or neither). For this reason, the EEOC

has concluded that "[s]exual orientation discrimination is sex discrimination

because it necessarily entails treating an employee less favorably because of the

employee's sex." *Id*. To illustrate, the EEOC gives an example:

> [A]ssume that an employer suspends a lesbian
> employee for displaying a photo of her female spouse
> on her desk, but does not suspend a male employee for
> displaying a photo of his female spouse on his desk.
> The lesbian employee in that example can allege that
> her employer took an adverse action against her that the
> employer would not have taken had she been male.
> That is a legitimate claim under Title VII that sex was
> unlawfully taken into account in the adverse
> employment action. The same result holds true if the
> person discriminated against is straight. Assume a
> woman is suspended because she has placed a picture
> of her husband on her desk but her gay colleague is not
> suspended after he places a picture of his husband on
> his desk. The straight female employee could bring a
> cognizable Title VII claim of disparate treatment
> because of sex.

*Id*. (citation omitted). Under this framework, "but for [the employee's] sex," the

employee's treatment would have been different. *Manhart*, 435 U.S. at 711.

Because this situation "meets the statutory requirements" of Title VII, the statute

"must extend" to prohibit it. *Oncale*, 523 U.S. at 80.

4

One could argue in response that a man married to a man is not similarly situated to a man married to a woman, but is instead similarly situated to a woman married to a woman. In other words, one might contend that, for comparative purposes, a gay man is not married to a man; he is married to someone of the same sex, and it is other people married (or otherwise attracted) to the same sex who are similarly situated for the purpose of Title VII. In my view, this counterargument, which attempts to define "similarly situated" at a different level of generality, fails to demonstrate that sexual orientation discrimination is not "but for" sex discrimination. The Supreme Court rejected an analogous argument on interracial marriage—"that members of each race [were] punished to the same degree"—in *Loving v. Virginia* and held that treating all members of interracial relationships the same, but less favorably than members of intraracial relationships, was a race-based classification violating the Equal Protection Clause. *See* 388 U.S. 1, 7–8 (1967). The same logic suggests that it is sex discrimination to treat all individuals in same-sex relationships the same, but less favorably than individuals in opposite-sex relationships. Similarly, *Manhart* tells us that sex discrimination is treating someone "in a manner which *but for* that person's sex would be different," 435 U.S. at 711 (emphasis added)

5

(internal quotation marks omitted), suggesting that when evaluating a comparator for a gay, lesbian, or bisexual plaintiff, we must hold every fact except the sex of the plaintiff constant—changing the sex of *both* the plaintiff and his or her partner would no longer be a "but-for-the-sex-of-the-plaintiff" test.

Thus in my view, if gay, lesbian, or bisexual plaintiffs can show that "but for" their sex, *Manhart*, 435 U.S. at 711, they would not have been discriminated against for being attracted to men (or being attracted to women), they have made out a cognizable sex discrimination claim. In such a case, then, traditional sex discrimination would encompass discrimination on the basis of sexual orientation. Neither *Simonton* nor *Dawson* addressed this argument.

## II.    Sexual Orientation Discrimination As Associational Sex Discrimination

Next, sexual orientation discrimination is discrimination "because of . . . sex" because it treats people differently due to the sex of their associates. The associational discrimination theory, which we articulated with respect to racial discrimination eight years after our decision in *Simonton*, provides that "an employer may violate Title VII if it takes action against an employee because of the employee's association with a person of another race." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). As we explained, "[t]he reason [for this holding]

6

is simple: where an employee is subjected to adverse action because an employer

disapproves of interracial association, the employee suffers discrimination

because of the employee's *own* race" in relation to the race of his or her associate.

*Id*. at 139 (emphasis in original).

As the Supreme Court has observed, Title VII "on its face treats each of the

enumerated categories exactly the same,"[1] and for that reason "the principles . . .

announce[d]" with respect to sex discrimination "apply with equal force to

discrimination based on race, religion, or national origin," and vice versa. *Price*

*Waterhouse v. Hopkins*, 490 U.S. 228, 243 n.9 (1989). Thus, the associational theory

of race discrimination applies also to sex discrimination. Putting aside romantic

associations, this principle is not controversial. If a white employee fired or

subjected to a hostile work environment after friendly association with black

coworkers has a claim under Title VII, *see Drake v. Minnesota Min. & Mfg. Co.*, 134

F.3d 878, 881, 883-84 (7th Cir. 1998) (finding no categorical bar to the application

of the associational theory of race discrimination to interracial friendships), then

a female employee fired or subjected to a hostile work environment after friendly

---

[1] The only exception, not relevant here, is for a "bona fide occupational qualification"
("BFOQ"), which is a justification for some differential treatment based on religion, sex,
or national origin but not based on race. *See* 42 U.S.C. § 2000e-2(e); *see also Price*
*Waterhouse v. Hopkins*, 490 U.S. 228, 242 (1989).

association with male coworkers should have a claim under Title VII. Once we accept this premise, it makes little sense to carve out same-sex relationships as an association to which these protections do not apply, particularly where, in the constitutional context, the Supreme Court has held that same-sex couples cannot be "lock[ed] . . . out of a central institution of the Nation's society." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2602 (2015); *see also United States v. Windsor*, 133 S. Ct. 2675, 2693-94 (2013) (explaining that differentiation between opposite-sex and same-sex couples in the Defense of Marriage Act "demeans the couple, whose moral and sexual choices the Constitution protects, and whose relationship the State has sought to dignify" (citation omitted)). In sum, if it is race discrimination to discriminate against interracial couples, it is sex discrimination to discriminate against same-sex couples.

Therefore, I conclude that if gay, lesbian, or bisexual plaintiffs can show that they would not have been discriminated against but for the sex of their associates, they have made out a cognizable sex discrimination claim. In such a case, the associational theory of sex discrimination would encompass discrimination on the basis of sexual orientation. Because *Simonton* and *Dawson* were decided before *Holcomb*, we have had no opportunity to address the

associational theory of sex discrimination as applied to sexual orientation

discrimination.

### III.  Sexual Orientation Discrimination As Gender Stereotyping

Finally, sexual orientation discrimination is discrimination "because of . . .

sex" because such discrimination is inherently rooted in gender stereotypes. In

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004), we

considered "a crucial question: What constitutes a gender-based stereotype?" *Id.*

at 119-20. While we did not definitively answer that question, we invoked the

Seventh Circuit's observation that whether there has been improper "reliance

upon stereotypical notions about how men and women should appear and

behave" can sometimes be resolved by "consider[ing] . . . whether [the plaintiff's]

gender would have been questioned for [engaging in the relevant activity] if he

were a woman rather than a man." *Id.* at 120 n.10 (quoting *Doe ex rel. Doe v. City*

*of Belleville, Ill.*, 119 F.3d 563, 581–82 (7th Cir. 1997), *vacated on other grounds by* 523

U.S. 1001 (1998) (remanding the case in light of *Oncale v. Sundowner Offshore*

*Servs., Inc.*, 523 U.S. 75 (1998))).

Relying on common sense and intuition rather than any "special training,"

*see Back*, 365 F.3d at 120 (quoting *Price Waterhouse*, 490 U.S. at 256), courts have

9

explained that sexual orientation discrimination "is often, if not always, motivated by a desire to enforce heterosexually defined gender norms. In fact, stereotypes about homosexuality are directly related to our stereotypes about the proper roles of men and women. . . . The gender stereotype at work here is that 'real' men should date women, and not other men," *Centola v. Potter*, 183 F. Supp. 2d 403, 410 (D. Mass. 2002); *see also Boutillier v. Hartford Pub. Sch.*, No. 3:13-CV-01303-WWE, 2016 WL 6818348 (D. Conn. Nov. 17, 2016) ("[H]omosexuality is the ultimate gender non-conformity, the prototypical sex stereotyping animus."). Indeed, we recognized as much in *Dawson* when we observed that "[s]tereotypical notions about how men and women should behave will often necessarily blur into ideas about heterosexuality and homosexuality."398 F.3d at 218 (alteration in original) (internal quotation marks omitted). Having conceded this, it is logically untenable for us to insist that this particular gender stereotype is outside of the gender stereotype discrimination prohibition articulated in *Price Waterhouse*.

Numerous district courts throughout the country have also found this approach to gender stereotype claims unworkable. *See, e.g., Videckis v. Pepperdine Univ.*, 150 F. Supp. 3d 1151, 1159 (C.D. Cal. 2015) (collecting cases) ("Simply put,

10

the line between sex discrimination and sexual orientation discrimination is 'difficult to draw' because that line does not exist, save as a lingering and faulty judicial construct."). The binary distinction that *Simonton* and *Dawson* establish between permissible gender stereotype discrimination claims and impermissible sexual orientation discrimination claims requires the factfinder, when evaluating adverse employment action taken against an effeminate gay man, to decide whether his perceived effeminacy or his sexual orientation was the true cause of his disparate treatment. *See Fabian v. Hosp. of Cent. Connecticut*, 172 F. Supp. 3d 509, 524 n.8 (D. Conn. 2016). This is likely to be an exceptionally difficult task in light of the degree to which sexual orientation is commingled in the minds of many with particular traits associated with gender. More fundamentally, carving out gender stereotypes related to sexual orientation ignores the fact that negative views of sexual orientation are often, if not always, rooted in the idea that men should be exclusively attracted to women and women should be exclusively attracted to men—as clear a gender stereotype as any.

Thus, in my view, if gay, lesbian, or bisexual plaintiffs can show that they were discriminated against for failing to comply with some gender stereotype, including the stereotype that men should be exclusively attracted to women and

women should be exclusively attracted to men, they have made out a cognizable

sex discrimination claim. In such a case, the gender stereotype theory of

discrimination would encompass discrimination on the basis of sexual

orientation. In neither *Simonton* nor *Dawson* did we consider this articulation of

the gender stereotype at play in sexual orientation discrimination.

## IV.    Congressional Inaction

Our decision in *Simonton* was understandably influenced by "Congress's

refusal to expand the reach of Title VII" in the wake of "consistent judicial

decisions refusing to interpret 'sex' to include sexual orientation," which we

viewed as "strong evidence of congressional intent." 232 F.3d at 35. The Supreme

Court has indicated, however, that:

> [S]ubsequent legislative history is a hazardous basis for
> inferring the intent of an earlier Congress. It is a
> particularly dangerous ground on which to rest an
> interpretation of a prior statute when it concerns . . . a
> proposal that does not become law. Congressional
> inaction lacks persuasive significance because several
> equally tenable inferences may be drawn from such
> inaction, including the inference that the existing
> legislation already incorporated the offered change.

*Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (internal citations

and quotation marks omitted).

As several *amici* point out, there are idiosyncratic reasons that many bills do not become law, and those reasons may be wholly unrelated to the particular provision of a bill that a court is assessing. In light of the force of the arguments as to why discrimination "because of . . . sex" encompasses sexual orientation discrimination and *Oncale*'s admonition that "it is ultimately the provisions of our laws . . . by which we are governed," 523 U.S. at 79, we should not rely on the "hazardous basis" of subsequent congressional inaction, *LTV Corp.*, 496 U.S. at 650, to exclude sexual orientation discrimination from Title VII's coverage.

## V.    Conclusion

When *Simonton* was decided, this Court reached the same conclusion as every other circuit court that had considered the issue: that discrimination "because of . . . sex" did not encompass discrimination on the basis of sexual orientation, a view then shared by the EEOC. But in the years since, the legal landscape has substantially changed, with the Supreme Court's decisions in *Lawrence v. Texas*, 539 U.S. 558 (2003), and *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), affording greater legal protection to gay, lesbian, and bisexual individuals. During the same period, societal understanding of same-sex relationships has evolved considerably.

There is no doubt that sexual orientation discrimination "was assuredly not the principal evil Congress was concerned with when it enacted Title VII." *Oncale*, 523 U.S. at 79. However, "statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws . . . by which we are governed." *Id*. Title VII prohibits all "discriminat[ion] . . . because of . . . sex" and its protections "must extend to [discrimination] *of any kind* that meets the statutory requirements." *Id*. at 80 (emphasis added). Despite recent congressional inaction in the face of judicial decisions excluding sexual orientation discrimination from Title VII's coverage, there is "no justification in the statutory language . . . for a categorical rule excluding" such claims so long as a plaintiff can demonstrate that he or she was discriminated against "because of . . . sex." *Id*.

Taking a fresh look at existing cases, the EEOC and other advocates have articulated three ways that gay, lesbian, or bisexual plaintiffs could make this showing. First, plaintiffs could demonstrate that if they had engaged in identical conduct but been of the opposite sex, they would not have been discriminated against. Second, plaintiffs could demonstrate that they were discriminated against due to the sex of their associates. Finally, plaintiffs could demonstrate

14

that they were discriminated against because they do not conform to some

gender stereotype, including the stereotype that men should be exclusively

attracted to women and women should be exclusively attracted to men. Neither

*Simonton* nor *Dawson* had occasion to consider these worthy approaches.  I

respectfully think that in the context of an appropriate case our Court should

consider reexamining the holding that sexual orientation discrimination claims

are not cognizable under Title VII.  Other federal courts are also grappling with

this question, and it well may be that the Supreme Court will ultimately address

it.